or Gibbons, case number 23-7993. May it please the Court, Ines McGillian here for John Leavens. I reserve two minutes for rebuttal. Mr. Leavens is asking this Court to vacate his statutory maximum revocation sentence. For due process violations and because it was substantively and procedurally unreasonable. He's also asking this Court to vacate his special conditions of supervised release and to strike them from the judgment below. None of them were orally pronounced. All of them were altered in the final judgment. And there was no valid incorporation or waiver of their oral pronouncement. Why do you say there was no waiver when the judge effectively, explicitly, asked do you want me to read these things or do you understand them? Do you understand that you're bound by these things which you were given the day before in writing? Do you want me to read them? And the answer was I understand. Which Mr. Leavens asserts is not an unequivocal waiver of oral pronouncement. At best, it would be an equivocal statement of understanding that he understood those conditions. There can't be a valid waiver here for numerous reasons. These conditions were provided to his counsel at the close of business 24 hours, less than 24 hours before the sentencing. The only way there could be a valid waiver here is if the judge had said, Mr. Leavens, do you waive oral pronouncement of this rough draft of special conditions that we sent to your attorney at close of business yesterday while you were in jail and your attorney has not had time to look at them? Did the attorney say I have not had time to review this? He did not. So why do we think why do we assume 24 hours is not adequate time for the lawyer to review it? A short time of a meeting before the sentencing? Lawyers generally meet with their clients before sentencing, right? Why? What is it that's so complicated about these things? Well, Your Honor, these are special conditions. They don't have any kernel of origin in the guidelines. All of them criminalize perfectly legal behavior like going to see an animated movie, possessing a racy book, missing an appointment, missing medications. Right, and that's what they say. And you're not suggesting that these are things that cannot be imposed. They can be imposed if they're appropriate. And your argument is not that they are inappropriate, it seems to me. It is just that they were not orally pronounced. A large number of them are inappropriate, Your Honor. For instance, Mr. Lievens doesn't have any children. His crime of conviction, the underlying crime. But it's not about his children. I thought it was his issue that you're trying to raise that this condition applies even to his children when it doesn't explicitly say even your own children. Even your own children. But there are no such children, so why is he worried about this? Why is this even right? If he ever has children, he can come back and raise an objection. Because this clearly violates the parsimony principle, and Mr. Lievens can only now challenge the legality of these special conditions. And the gravamen of the error here is that they were revised substantially and materially revised after sentencing took place. So can you give me an example other than 7 and 8, which the government has yielded on, where there was a material change from the, what you call the rough draft, and the written judgment? Well, condition number 2 added the words including your own children to the first sentence. That first sentence is the operative sentence that prohibits contact with his own children. The second sentence is a reporting requirement. All of these conditions had the word change from shall to must. The Supreme Court has held that must has more commanding force than the word shall. And so all of these conditions ---- So you think that if he had, if the written judgment had used the word shall and he violated what it said he shall do, that he would have a defense that, oh, it only said I shall do this, not I must do this, so I don't have to do it? Mr. Lievens isn't asserting that he would make that claim, but I think that ---- Of course he's not. That's not what I asked, though. Are you saying that that's what would make it material, is that he's deprived of some defense or argument that this is a more stringent condition than the one that he thought was going to happen based on the written document that was provided to him? Your Honor, the grovelment of the error here is that the judge did not pronounce this sentence properly at the sentencing itself. It was revised after sentencing took place. And that is not permissible. Sentencing is supposed to happen in open court. And there can be no valid waiver here. A waiver has to be knowing, voluntary, and intelligent. Mr. Lievens ---- In what is written, you can't waive the pronouncement of something that you didn't know was coming. You can waive the oral pronouncement of something that you've been told is going to happen. And it seems to me the issue is where are there material variations. But I think I sort of derailed you here to talk about the conditions when I imagine for most real people in real life, the jail sentence is much more important. Well, Mr. Lievens has almost completed his jail sentence. It is important to him. These special conditions are important. Okay. Because they criminalize a large swath of otherwise perfectly legal behavior. I am happy to address the last-minute disclosure. You can address whatever you want. If you want to spend all your time on the conditions, that's fine. I thought you said you were going to talk about the jail sentence, and then we got ---- I pushed you into talking about the other things. I am happy to address whatever questions this Court has. But just to complete my argument on the special conditions, we have a situation here where a judge produced at the ---- sorry, the government produced at the very last minute a long list of special conditions that bore another defendant's name on them. They were all in rough draft form. They were not adequately pronounced at the sentence itself. And sentencing is a solemn occasion. Mr. Lievens, the public, a reporter, a concerned family member is entitled to know at sentencing what a man's sentence is. The last-minute disclosure is problematic because counsel had no opportunity to scrutinize these conditions. And many of them are overbroad and vague for reasons I describe in my brief. If I could address the last-minute disclosure of the 24-month sentence recommendation, Mr. Lievens' counsel did not object when this surprising and curious statement was made in the middle of his sentencing, after he had already pled guilty and sentencing had already begun. The only recourse his attorney had at that point was to object and seek a continuance. Mr. Lievens asserts that at this point the prejudice had already occurred. His counsel was unprepared for argument. Mr. Lievens also asserts that he can raise for the first time on appeal an objection to the ex parte nature of this ex parte sharing with only the government this 24-month sentence recommendation. And this is entitled to de novo review. Mr. Lievens' counsel made absolutely no arguments addressing the 24-month sentence. And the court automatically adopted it. And so that's prejudice. Okay. So you, as you said, have reserved some time for rebuttal. We'll hear from the government, and then we'll hear from you.  Thank you so much. Good morning. May it please the Court. Joshua Rothenberg for the government. First, to address the oral pronouncement issue, there was a waiver here. The district court asked whether Lievens understood the conditions or if he wanted them read, and Lievens said that he understood them. That was a valid waiver. He also did not object, which under Johnson is also a form of waiver, to the oral pronouncement. And these were ---- There's a difference between waiver and forfeiture. If you don't object, that is a forfeiture and subject to plain error review. If you affirmatively agree that something be done, then arguably there is not even a plain error review eligible. So there are different things. Your Honor, I do agree with that. Johnson did come out in 2004. I know that this has been clarified. Even if Johnson were to say that plain error review was necessary here, the error would not be plain given Lievens' response at the ---- that I understand. There's no case that counsel has cited or that I'm aware of that says that's not a valid waiver. I also want to note counsel suggested that these conditions would be unfamiliar. That's not so. Every one of these conditions was a condition that Lievens was either directly under at the time he violated his supervised release in this case, or in the case of Condition 7, there were ---- there was a close analog to it. So these would not have been surprising to him. I mean, he did have time to review them with counsel. He confirmed that, and he confirmed he understood them. So his waiver was valid. I do want to note one other thing. Counsel has suggested that the change from shall to must is in some way substantive. Counsel waived that argument on page 19 of the reply brief. Counsel said that was a nonsubstantive word change. Counsel did raise it in what is being called the 28J letter that was filed afterwards, but that is a waiver. With that said, if there are no other questions on the oral pronouncement, I will turn to the probation argument. Thank you, Your Honor. So probation is an arm of the court, but it is not the court itself. By statute, it has to have certain individual communications with counsel on both sides and with the defendant himself. There is no problem with it sharing a recommendation with one party and not the other. There is no case that says that. So it would at the very least not be plain error. Counsel's suggestion that plain error does not apply to an unobjected error where she admits that there could have been an objection and there could have been a cure is completely contrary to Federal rule of criminal procedure 52B. And so without a binding case, counsel cannot win this one. Similarly, there is no harm to the defendant. Counsel has not identified any arguments that Levins would have had available to him that would have been successful. Well, indeed, he made arguments that for what he thought the sentence should be, which were lower than what the guidelines recommended. And he was, counsel was at least on notice that theoretically a 24-month sentence was available to the court. Precisely. And he made all the arguments for leniency that I guess he could think of. That's exactly so, Your Honor. He had his chance to make his arguments for leniency. They did not sway the court. And there have been no identified things that would have been different had he known probation's recommendation going in. And the district court didn't at least explicitly or apparently rely on the recommendation. Is that right? That's correct. And I'll also note it was also our recommendation. So even if probation hadn't shared it with us, I don't know what we would have recommended. But it was also our recommendation. And he certainly had no right to know what we were going to recommend before we walked into sentencing. And we could have waited until sentencing and then said we're actually recommending the statutory maximum for the exact same reasons. I'm going to go to the next question. It's not really raised by the case, but I was just puzzled by it. I think there was at least a cursory mention, I mean, at least a cursory challenge or suggestion in the defendant's brief that the term of supervised release was not adequately justified. And I was struck by the fact that on his underlying conviction that gets all of this started, he was subject to a lifetime special parole. And then after his first violation, he was sentenced for that violation to whatever term of incarceration plus 15 years of supervised release. And then again, 15 years this time. What is the operative term of supervised release now in your understanding? My understanding is it's 15 years. The 15 years from this revocation proceeding, yes. Is there any significance in the case to the underlying lifetime supervised release? Because it seemed to me that he was getting a peculiar break, that you're sentenced, apparently either without objection or sentences affirmed, to a lifetime of supervised release. And then if you do something kind of minor, or at least not as significant as your underlying crime, that violates the conditions of supervised release, you then get a lower supervised release term as part of that? Or there's a limit on what you can be sentenced to? I mean, would it have been open to the judge to give lifetime supervised release for this supervised release violation now? Your Honor, I'd have to double-check the petition. But I believe the answer to that is that the judge could have, but did not do so. It's just that everybody has a peculiar sequence of things. But that's not really the challenge. I'm just trying to understand it. And if I may just quickly address the challenge that you're talking about. Yes, I agree. The supervised release explanation in United States v. Burden, this court recognized that the explanation for the term of imprisonment can be proper where it is based on the proper factors to apply to the term of supervised release. I would like to address a few of the substantive challenges to these special conditions. I don't anticipate I'll get to all of them, but I'm happy to answer any questions. But I want to first address the overarching issue of whether the district court can order a defendant to comply with the rules of a program, whether that be computer and Internet monitoring, substance abuse, mental health. The answer to that is yes. It's not a delegation problem because the district court is not required to design a program, and it may require the compliance with a program. And it's certainly not a vagueness problem. I think the Seventh Circuit spoke well about this and said that the defendant will understand once he gets the rules what he is supposed to do. The condition is not vague. He knows he has to comply with those rules. The second thing I wanted to address is the prohibition on seeing his own children. First, we don't agree that that wasn't in the draft that was sent. The draft that was sent says that he cannot see any children in the operative sentence, and then in the next sentence, the reporting requirement says, if you do see a child, comma, including your own child, comma, then you need to report it. So we think it's clear that it was in that, and the written judgment was merely clarificatory in that respect. Also, the defendant does not have children. He does not assert that he wants children. This case is different from Myers where the defendant did have a child, and our argument was that we weren't sure what the nature of the relationship would be when he was released. Here, we simply have no idea if he'll ever have a child. That means it's unripe. We would also submit that means that the third prong of plain error cannot be met here because he's shown nothing he cannot actually do based on this condition. The final thing I would like to address is the – We believe it's unripe. Is it your first position that it's unripe? Yes. We also – our second position is that it's, in any event, justified, and our third position is that it is, in any event, not preventing him from doing anything. So under plain error, which Myers was not under, under plain error, he cannot meet the third prong. And the final condition I would like to address is the adult pornography condition. This is a defendant who tried to use pornography to lure a minor into a sexual relationship with him. He then possessed pornography in violation of his conditions previously. Certainly, it's not plain error to ban him from viewing pornography in this case. I'd be happy to address any other questions on any of the issues in this case. Thank you very much. We'll be over the phone. Thank you, Your Honor. Of course, I'd like to address the government's argument that Mr. Lievens has waived any argument based on the change from shall to must. It was after briefing that the government agreed to make these emailed conditions part of the record for this Court to review. Mr. Lievens' argument, which I am making now, is that, yes, these don't describe substantive prohibitions of behavior, namely telling Mr. Lievens these are things that you now cannot do, but they are substantive in the sense that the Supreme Court has held that this word change now has more commanding force. Again, the grovelman here is that the district court produced a rough draft or probation produced a rough draft before sentencing, which violates due process, and sentence was only finalized after the sentencing hearing. And this violates due process. Furthermore, regarding the explanation for the term of supervised release, unlike the case that this Court heard yesterday, the term of supervised release in this case is more than seven times the length of the incarcerated sentence. It is almost four presidential terms. So Mr. Lievens will be 51 by the time these conditions of supervised release How did he get out from under the lifetime supervised release, which was originally imposed for his original offense? It was vacated and because he paid a pound of flesh, Your Honor, and served time in jail. And so that sentence and that sentencing proceeding is in the past. Right now, Mr. Lievens is faced with a separate set of violations. There's no charge of criminal conduct here. And it's a brand-new sentencing proceeding. And so at sentencing, my understanding is that a judge takes a defendant as he is on the day of sentencing, not as he stood before the Court. I thought he was charged with possession of controlled substances, that that's what he pled to. He did not plead to the sexual assault violation, so that's not there. There was no violation charge for the sexual assault that occurred before the facts of this case. There's no criminal charge in this case, which makes this case slightly different from the other cases where a PSR was actually produced. Here, Mr. Lievens was only charged with violations of supervised release, not a separate criminal charge. Not a separate criminal charge, but the behavior that he was charged with as violating supervised release would know it's not. Did not include any sexual offense, Your Honor. No, I didn't say sexual offense. I said you – and maybe I misunderstood what you were saying. I thought you were saying he was not charged with any criminal conduct or he didn't plead guilty or – There was no criminal charge accompanying these violations. There was no separate criminal charge. Correct. The violations are – The violations of supervised release that he pled to – Yes. Were, were they not violations of criminal law? They were not – there was no proof of a violation of a criminal law. These were violations of supervised release. He did not admit – I understand what the charge was.  He admitted to possessing – He did not admit to conduct, which was the possession of – K-2.  That it would be a crime for him to possess. Yes. He did not admit criminal possession. He admitted a violation of supervised release. Okay. Just to be clear. Thank you so much. Thank you. We'll reserve the decision and we'll hear from you.